# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

SANDRA ALFREDA CARSON,     )
                       )
     Plaintiff,          )
                       )
v.                   )
                       )     CV416-083
CAROLYN COLVIN,        )
Acting Commissioner of     )
Social Security,          )
                       )
     Defendant.       )

## REPORT AND RECOMMENDATION

Plaintiff Sandra Carson seeks judicial review of the Social Security Administration's denial of her application for Disability Insurance Benefits (DIB) benefits.

## I.    GOVERNING STANDARDS

In social security cases, courts

> review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[1] to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

## II.  ANALYSIS

Carson, who was 57 years old when her DIB claim was denied, alleges disability beginning March 6, 2013.  Tr. 54.  She has a high school education and past relevant work as a nursing assistant.  Tr. 54, 60, 186.  After a hearing, the ALJ issued an unfavorable decision. Tr. 1-4, 80-89.

The ALJ found that Carson's degenerative and discogenic disease of the lumbar spine (status post-lumbar fusion surgery) and obesity did not meet or medically equal a Listing.  Tr. 82-85.  Based on the evidence of record, the ALJ found that she retained the RFC for medium work,[2] except that "she is limited to frequent climbing of stairs and ramps, crouching, and crawling and occasional climbing of ropes, ladders, and scaffolds."  Tr. 85.  Plaintiff, he determined, was able to perform her past relevant work as a nurse assistant.  Tr. 89.  Hence, Carson was not disabled.  *Id.*.  She disagrees, arguing that the ALJ erred in his

---

[2]  In February and August 2014, agency reviewing physicians opined that plaintiff retained the RFC to lift and carry 50 pounds occasionally (about 1/3 or less of an 8-hour day) and 25 pounds frequently (about 1/3 - 2/3 of an 8-hour day).  Tr. 58-59, 72. Carson's treating physician, Dr. Wilfredo Dolor, however, opined in August 2015 that she could only lift up to 20 pounds occasionally, 10 pounds frequently, and 5 pounds without limitation.  As discussed in more detail below, this determination coincides with the requirements for light work, not medium work.

evaluation of her credibility and the medical evidence.   Doc. 17.

## A.    Strength Limitations to Carson's RFC

Social Security Ruling (SSR) 96-8p[3] regulates an ALJ's assessment of a claimant's RFC.   1996 WL 374184.   Under SSR 96-8p, the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . .   Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy."   *Id.* at *1.   The regulation specifically mandates a "narrative discussion" of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and [a decription of] the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."   *Id.* at *6.

The ALJ is entitled to formulate the RFC and resolve any ambiguity or inconsistency in the medical evidence, 20 C.F.R. §§ 416.927(d)(2),

---

[3]    Social Security Rulings "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted."   20 C.F.R. § 402.35(b)(1).   SSRs are entitled to deference, but are not binding on the courts. *Fair v. Shalala*, 37 F.3d 1466, 1467 (11th Cir. 1994); *cf. Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings . . . unless they are plainly erroneous or inconsistent with the Act or regulations").

946(c), based on the entire record, 20 C.F.R. § 416.945(a)(3). But he must make his own findings, specifying what functions a claimant is capable of performing, and must not simply make conclusory statements regarding a claimant's RFC. *Id.* at § 404.1546. *See also Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007) ("While the ALJ could have been more specific and explicit in his findings," he sufficiently complied with SSR 96-8p because his decision made it clear that "he did consider all of the evidence and found that it did not support the level of disability [the claimant] claimed.").

The ALJ here made no specific finding as to Carson's strength limitations, but he implicitly found her capable of lifting and carrying 25-50 pounds by finding her capable of medium work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (medium work is defined as work that involves lifting no more than 50 pounds at a time, with frequent lifting or carrying objects that weigh 25 pounds, and standing for approximately six hours out of an eight-hour work day); *see also* DICOT 355.674-014 (work as a nurse assistant requires the ability to exert "20 to 50 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or 10 to 25 pounds of force frequently (Frequently: activity or

condition exists from 1/3 to 2/3 of the time) and/or greater than negligible up to 10 pounds of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects")).  Hence, the ALJ's implicit finding that Carson could regularly lift 25-50 pounds at a time during an 8-hour day was outcome determinative.[4]

## I.   Plaintiff's Credibility

The ALJ discredited plaintiff's subjective testimony as inconsistent with her admitted activities of daily living and unsupported by the objective medical evidence, and also because (despite having insurance) she had not sought care from her neurosurgeon or any other specialist since January 6, 2014, relied on over-the-counter pain medication, and pursued a largely conservative course of treatment.   Tr. 87-88.   Plaintiff argues that the ALJ misrepresented much of the evidence, erred in his credibility analysis, and failed to address her probative lengthy work history in assessing her credibility.   Doc. 17.

---

[4]   Had the ALJ not found her capable of lifting and carrying 25-50 pounds, based on her advanced age, education, and lack of transferable skills to a lower exertional level (*see* tr. 43 (VE testimony)), plaintiff argues that the Medical-Vocational Guidelines (the "Grids") would direct an automatic finding of disability.  *See* 20 C.F.R. § 404, Subpt. P, App. 2 §§ 201.06 (finding of disability directed if limited to sedentary work), 202.06 (finding disability directed if limited to light work).   As remand is based on errors in assessing plaintiff's credibility and the medical evidence, the Court need not, and will not, reach the question of whether plaintiff's ability to work should have been evaluated under the Grids.

When a claimant attempts to establish disability through his own testimony of pain and other subjective symptoms, the ALJ applies a three-part "pain standard." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms, the ALJ then evaluates the extent to which the intensity and persistence of the claimant's pain limits his ability to work. 20 C.F.R. §§ 404.1529(b), 416.929(b). The ALJ may consider the history and testimony, medical signs and laboratory findings, medical opinion evidence, and any other evidence of record describing how the pain affects his daily activities and ability to work. *Id*. at §§ 404.1529(c), 416.929(c).

If a plaintiff "testifies as to his subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). While an ALJ's credibility determination need not "cite 'particular phrases or formulations,'" it "cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ]

considered [a plaintiff's] medical condition as a whole.'"  *Id*. at 1210-11

(quoting *Foote*, 67 F.3d at 1561).

The ALJ first discredited plaintiff's subjective pain testimony as

inconsistent with her admitted activities of daily living.[5]  While "a

---

[5]     As the ALJ noted, plaintiff

lived alone and, during the day she ate breakfast, took her medications, checked her blood pressure, briefly cleaned her apartment, watched television, read, and attended Bible study on Tuesday and Friday nights.  When needed, her children would assist her with something around the house.  She had no problem dressing but could bathe no longer than ten minutes due to sharp pains.  Otherwise, she had no problems in attending to personal grooming and hygiene.  She prepared her own meals -- salads, sandwiches, and complete dinners and breakfasts daily.  It took her no more than one hour to prepare a full meal.  She could not stand for a prolonged period, bend, or stretch.  She did laundry weekly.  She did not need help or encouragement to do these things.  She went outside alone daily and traveled by walking or driving a car.  She shopped in stores for clothing, food, and household items biweekly for thirty minutes or less if funds were available.  Hobbies included reading, church, watching television, and visiting her mother and "grands."  Her condition had not affected her ability to engage in these activities since its onset.  She attended church and went [to] her mother's house regularly.  She was able to walk one-third mile before needing to stop and rest for ten minutes before resuming walking.  The claimant denied any difficulty in managing funds, concentrating, attending, remembering, following written or oral instructions, and getting along with others.  She did not get stressed and had had no unusual behavior or fears.  She denied the need for any assistive device to ambulate.

[ . . . ]

At the hearing, the claimant testified in response to questioning by her representative that she can sit a total of three hours for one hour at one time after[ ] which she lies in a fetal position for one hour.  She could not stand or walk a total of two hours throughout the day.  She can walk for thirty minutes.  She has a cane but did not bring it with her to the hearing.  The maximum amount of weight she could carry would be her purse.  There were sixteen stairs to climb to her apartment with which she has difficulty.  Her son and daughter-in-law help her do the "big cleaning."  She is able to stand at the sink for ten minutes.  She denied having any hobbies.  During the day, she prays

claimant's admission that he participates in daily activities for short durations does not necessarily disqualify him from a disability," *Crow v. Comm'r, Soc. Sec. Admin.*, 571 F. App'x 802, 807 (11th Cir. 2014) (citing 20 C.F.R. § 404.1529(c)(3)(i)); *see also Smith v. Califano*, 637 F.2d 968, 971-72 (3d Cir. 1981) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity"), here plaintiff admitted to activities that contradict her claims of total disability. She cooks full meals, does laundry, drives, goes shopping, regularly attends church and visits family, regularly climbs stairs, and is capable of walking a considerable distance. Tr. 87-88. These activities certainly erode her credibility as to her testimony that she cannot lift more than her purse. However, the ALJ did not find plaintiff capable of performing sedentary or light work -- he found her capable of performing her past, relevant, *medium* work as a nurse assistant. *See* tr. 89.

An implicit finding that plaintiff retained the strength to lift up to 50 pounds at a time, and lift and carry up to 25 pounds frequently, was absolutely necessary to finding her capable of performing the

---

and reads her Bible throughout the day. She is not a "TV watcher" and basically sits reading. . . .

Tr. 87-88.

requirements of medium work. 20 C.F.R. § 404.1567(c). The ALJ therefore needed to point to some specific activity in the record that demonstrated Carson could still lift and carry 25 pounds frequently and up to 50 pounds at a time. The ALJ did not so do, and the Commissioner has not offered even a post-hoc rationalization for why the ALJ considered plaintiff's daily activities demonstrated she retained such capacity. Doc. 18 at 14 (concluding, without any analysis or reference to the 540-page record, that "the ALJ also properly considered Plaintiff's daily activities in assessing her credibility."). And the Court cannot speculate as to the ALJ's reasoning or provide its own explanation for how the ALJ determined, based on plaintiff's enumerated daily activities, that Carson could still lift and carry 25 pounds frequently and lift up to 50 pounds at a time. *Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010). *See also Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (the ALJ must state specifically the weight accorded each item of evidence and the reasons for her decision on the evidence).

The ALJ also discounted plaintiff's credibility because, despite having medical insurance coverage, she had not sought care from her neurosurgeon or any other specialist since the beginning of 2014, relied on

over-the-counter pain medication rather than stronger, narcotic pain mediation, and pursued a largely conservative course of treatment. Tr. 87-88. *See Falcon v. Heckler*, 732 F.2d 827, 832 (11th Cir. 1984) ("use of conservative treatments only, and lack of sufficiently strong pain medication" can be substantial evidence that pain is not disabling). Plaintiff attempted epidural injections and physical therapy without relief and ultimately sought lumbar spinal fusion surgery in 2013 to gain relief from her back pain, but sought no further such care. Tr. 258, 348-49; *see also* tr. 351-53, 423 (using a bone stimulator as ordered post-surgery but continuing to experience pain and stiffness). And she had a well-documented allergy to several pain medications, but not all. *See* tr. 39 (she can tolerate Tylenol and Aleve, which she takes for the pain), 464 (noting allergies to several opioid and antihistamines), 470 (noting allergies to additional opioids); *see also* tr. 88 (acknowledging well-documented pain medication allergy). The ALJ permissibly pointed to plaintiff's conservative treatment as contradicting her allegations of totally disabling pain, and Carson offers no explanation as to why she failed to seek any further treatment for her claimed debilitating back pain. *See Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 873 (11th

Cir. 2016) (ALJ's reliance on conservative treatment proper unless the claimant asserted or provided evidence that there was a reason for his lack of more aggressive treatment unrelated to the severity of his symptoms).

The ALJ finally discounted plaintiff's credibility based on a dearth of objective medical evidence demonstrating a disabling back impairment. Tr. 86. He summarized her most recent objective imaging, including a radiological imaging in June 2014 (two months before a minor car crash) showing mild anterolisthesis at L4-5 and facet joint hypertrophy at L4-S1, and imaging in August 2014 (immediately following the car accident) showing multilevel degenerative changes and osteophyte formation, grade 1 spondylolisthesis at L4, but no acute injury. Tr. 86; *see also* tr. 466, 478-80. Contrary to plaintiff's contentions, these are indeed relatively modest objective findings -- even after the car accident that allegedly exacerbated her symptoms. And the largely normal gait, muscle strength, and deep tendon reflex examination findings cited by the ALJ (tr. 86) tend to indicate moderate, rather than severe and disabling, pain. While "pain alone can be disabling, even when its existence is unsupported by objective evidence," *Foote*, 67 F.3d at 1561, here the ALJ permissibly pointed to the objective evidence in the record as further

undermining Carson's allegations of *total disability*. But he did not identify which medical evidence he believed demonstrated plaintiff could meet the strength requirements of *medium* work, and the Commissioner fails to provide even a post-hoc explanation for this specific finding.

For the reasons above, the ALJ failed to provide clear and convincing reasons for discrediting plaintiff's subjective testimony as to her inability to perform the requirements of her past, relevant, medium work as a nurse assistant. This error, further, was outcome determinative. The ALJ's RFC assessment that plaintiff could perform the strength requirements of medium work -- rejecting her testimony she could not lift and carry more than 10 pounds to find she could lift and carry 25 pounds frequently and up to 50 pounds at a time -- was not harmless to the ultimate disability determination. *See Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (error is harmless only where it does not contradict the ALJ's ultimate findings); DICOT 355.674-014 (defining strength requirements of medium work as a nurse assistant). This matter should be reversed and remanded for further proceedings.[6]

_____

[6] Plaintiff also contends that the ALJ was required to address her probative, lengthy

## 2.    Medical Opinion Evidence

Plaintiff contends the ALJ failed to properly articulate good cause

for according less weight to treating physician Dr. Wilfredo Dolor's

opinion that, among other things, she could lift only 20 pounds

occasionally, 10 pounds frequently, and 5 pounds without limitation.

Tr. 527-29 (opining that Carson's "moderately severe back pain" was

---

work history in assessing her credibility.   Docs. 17 at 16-17, 19 at 3-4.   Certainly, her
uninterrupted work history as a nurse assistant from 1988 through 2013 (tr. 173-79),
when she had spinal surgery for her back impairment, militates against a malingering
finding.   And it is true that the regulations require an ALJ to consider all of the
evidence, including prior work history or attempts, in formulating an RFC.   *Id.* at 16
(citing 20 C.F.R. § 404.1529(c) and SSRs 96-8p & 96-7p).

However, it is unclear precisely to what purpose Carson seeks to have this
evidence considered.   The ALJ did not find she was malingering or that he thought
she "trade[d] in [her] productive, and lucrative, work career for the far less lucrative
'career' of receiving disability benefits."   Doc. 17 at 17.   And the ALJ was clearly
aware of plaintiff's work history, as evidenced by the lengthy discussion of her past
work at the hearing (tr. 22-26) and her earnings records in the Administrative Record
(tr. 173-79).   *Coleman v. Astrue*, 2012 WL 3231074 (M.D. Fla. Aug. 6, 2012)
(ALJ sufficiently considered claimant's work record where, among other things, he
elicited testimony from the VE regarding her past work and the earnings record was
part of the administrative record).

Since the case is being recommended for remand for reconsideration of plaintiff's
testimony, the Commissioner is invited to make some more explicit finding regarding
Carson's lengthy and stable work history.   This Court declines, however, to create a
new standard to require an ALJ to *explicitly* discuss a plaintiff's work history as part of
his credibility finding.   *See Lafond v. Comm'r of Soc. Sec.*, 2015 WL 4076943 at *9
(M.D. Fla. July 2, 2015) (noting that "the Eleventh Circuit has not had occasion to rule
on th[is] issue" and collecting cases from other circuits holding that an ALJ "must
consider a long and continuous past work record, with no evidence of malingering, as a
factor in determining the credibility of assertions of disabling impairment."); *Stricklin
v. Astrue*, 493 F. Supp. 2d 1191, 1998 (N.D. Ala. 2007) (holding the ALJ erred in
ignoring the plaintiff's work history of "good earnings record" and "very consistent
earnings").

permanent despite surgical intervention").[7]

The ALJ discounted Dr. Dolor's opinion as inconsistent with Carson's admitted daily activities, unsupported by clinical findings and observations, and because "in most instances, he referred [her] to some other treating sources for her back condition and did not conduct a thorough examination or advise her that she should restrict her activities in any manner." Tr. 88. The ALJ also mused that "[t]he severity of restriction Dr. Dolor suggests is not reasonably warranted by the experience of moderate, although, chronic pain." *Id.*

It is uncertain precisely what activities the ALJ believed contradicted Dr. Dolor's opinion, since he does not specify what part of plaintiff's daily routine convinced him that she was capable of more than Dr. Dolor supposed (lifting up to 20 pounds occasionally). *See* tr. 87. Plaintiff does not allege any difficulties with social functioning, and her

---

[7] In support of this argument, plaintiff contends that ALJ's are required to accord greater weight to treating physicians than to other medical sources. Doc. 17 at 6-8. This misstates the standard. Although the Social Security Act and Eleventh Circuit precedent provide that opinions of treating physicians are normally entitled to more weight, an ALJ may still discount a physician's opinion when the opinion is conclusory, unsupported by objective medical evidence and clinical findings, internally inconsistent, inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

testimony confirms that she is unhindered by mental impairments. Rather, she alleges severe and chronic back pain that limits her physical ability to work. So, her admitted ability to walk for some distance, manage her basic self-care, and socialize regularly does nothing to demonstrate she was indeed capable of lifting more than 20 pounds occasionally, 10 pounds frequently, and 5 pounds without limitation (tr. 527-29) -- much less that Carson can lift the *50 pounds* necessary to be found capable of medium work. *See* tr. 87 (concluding without elaboration that plaintiff's daily activities undercut Dr. Dolor's opinion that plaintiff "could not sit, stand, or walk longer than one hour each over an eight-hour period").

The Commissioner does not meaningfully respond to plaintiff's argument that the ALJ mischaracterized her activities of daily living, but instead parrots the legal standard without any reference to the case at hand. Doc. 18 at 14 (concluding, without *any* analysis whatsoever, that the ALJ "also properly considered Plaintiff's daily activities in assessing her credibility."). Given the Commissioner's silence, it appears there *is* no explanation for the ALJ's conclusion that a contradiction exists between plaintiff's limited daily activities and Dr. Dolor's opinion that

plaintiff is unable to lift more than 20 pounds occasionally.

The ALJ also discounted Dr. Dolor's credibility as unsupported by his own clinical findings or observations "regarding reflexes and the degree of restriction in range of motion." Tr. 88. On examination, Dr. Dolor repeatedly observed "decreased range of motion" and "tenderness" in plaintiff's lower back. Tr. 400, 405, 501, 512, 521. These rather imprecise clinical findings, taken with the objective medical evidence of normal degenerative changes in her cervical and lumbar spine (*see, e.g.*, tr. 463, 466, 477, 480) and her treating neurosurgeon's more detailed observations of a normal gait, 5/5 strength in her bilateral lower extremities, symmetric deep tendon reflexes, intact sensation, and negative straight leg raise testing (*see* tr. 349, 424, 465), tend to undermine Dr. Dolor's opinion of extreme limitations in Carson's capacity to sit, walk, and stand for longer than an hour at a time. What they *don't* do, however, is contradict his opinion that plaintiff could only pick up a maximum of 20 pounds occasionally. Again, the ALJ's entire disability finding hinges upon his determination that plaintiff retains the RFC to lift and carry 25 pounds frequently and up to 50 pounds at a time. It cannot be discerned from the ALJ's decision what clinical findings he believed

undermined Dr. Dolor's "20-pound" opinion, and the Court is not permitted to scour the record to provide post-hoc explanations about what evidence supports a medium work RFC assessment.

Finally, the ALJ discounted Dr. Dolor's opinion because he often referred plaintiff for treatment by other providers and failed to caution her to further restrict her activities. It is unclear how Dr. Dolor, a primary care practitioner, could be entitled to *less* credit for referring plaintiff's treatment out to specialists who would be better able to directly treat her severe pain allegations. And as discussed above, plaintiff reported walking and standing less than 2 hours a day, lifting and carrying no more than her purse, relying on family members to vacuum for her and accompany her to the grocery store, and having to lie down with a pillow propping up her back to alleviate pain from sitting too long (tr. 28-29, 31-37). It is difficult to imagine what *additional* restrictions Dr. Dolor should have suggested plaintiff adopt to alleviate her pain.

The only opinions that indicated that Carson could meet the medium work requirements of 20 C.F.R. §§ 404.1567(c), 416.967(c) were those of the nonexamining agency physicians, neither of whom reviewed the record subsequent to her August 26, 2014 car accident. *See* tr. 55-61

(dated February 10, 2014), 64-68 (dated August 19, 2014), 467-85

(emergency room records dated August 26 & 27, 2014). The ALJ erred by

basing his RFC assessment of plaintiff's strength limitations entirely

upon their opinions. *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir.

1987) (reviewing physicians' opinions are entitled to "little weight," and

"c[an]not serve as substantial evidence" alone).

## IV. CONCLUSION

In conclusion, the ALJ's RFC assessment -- specifically that plaintiff

could perform the strength requirements of medium work -- is not

supported by substantial evidence within the record.[8] For the reasons

---

[8] Though the Commissioner failed to raise the issue, the Court also considered
whether the DOT definition of Carson's past relevant work would give rise to a
harmless error finding. Under the DOT, work as a nurse assistant requires the
ability to exert "20 to 50 pounds of force occasionally (Occasionally: activity or
condition exists up to 1/3 of the time) and/or 10 to 25 pounds of force frequently
(Frequently: activity or condition exists from 1/3 to 2/3 of the time) *and/or greater than
negligible up to 10 pounds of force constantly* (Constantly: activity or condition exists
2/3 or more of the time) to move objects." DICOT 355.674-014 (emphasis added).
Because the DOT defines the job as "and/or" requiring the exertion of "greater than
negligible up to 10 pounds of force consistently," it is *possible* that even were
Dr. Dolor's opinion fully credited, plaintiff could still perform her past relevant work.
*See* tr. 527-29 (opining Carson could lift only 20 pounds occasionally, 10 pounds
frequently, and 5 pounds constantly).

However, several problems arise in that case. Plaintiff testified that she would be
unable to "lift and carry 10 pounds consistently throughout a day, like a third of the
day." Tr. 33. It is unclear whether she would be capable of lifting and carrying less
weight ("greater than negligible up to 10 pounds") consistently throughout the day.
And the Court cannot substitute its own judgment for that of a VE, whose testimony
would be necessary to establish that a restriction to lifting less than 10 pounds would

set forth above, this action should be **REMANDED** to the Social Security

Administration for further proceedings under 42 U.S.C. § 405(g).

This report and recommendation (R&R) is submitted to the district

judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and

this Court's Local Rule 72.3. Within 14 days of service, any party may

file written objections to this R&R with the Court and serve a copy on all

parties. The document should be captioned "Objections to Magistrate

Judge's Report and Recommendations." Any request for additional time

to file objections should be filed with the Clerk for consideration by the

assigned district judge.

After the objections period has ended, the Clerk shall submit this

R&R together with any objections to the assigned district judge. The

district judge will review the magistrate judge's findings and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are

advised that failure to timely file objections will result in the waiver of

rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648

---

not erode the available nurse assistant jobs to the point that there would be no jobs
available. Further, it is unclear whether application of the Grids would in fact direct
a finding of disability, as argued by plaintiff's counsel, or whether plaintiff is capable of
other, light work in the national economy as identified by the VE at the hearing. *See*
tr. 45-46. Because these issues are unresolved, remand for reconsideration is
necessary.

F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this __6th__ day of January, 2017.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA